## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| BRUCE DICKSTEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2022- cv- 1360 |
| v. | ) |
| | ) |
| ANTHONY D. MALZONE, | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S COMPLAINT
### FOR BREACH OF PARTNERSHIP AGREEMENT AND OTHER RELIEF

Plaintiff, Bruce Dickstein, by and through his undersigned counsel of Robbins DiMonte, Ltd., hereby files the instant Complaint for Breach of Partnership Agreement and Other Relief against Defendant Anthony D. Malzone, and in support hereof states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

### Parties, Related Entities, Jurisdiction and Venue

1.  Plaintiff Bruce Dickstein ("Plaintiff") is a founder and general partner of the Partnership named Dickstein and Malzone Partnership (the "Partnership"), which at times does business as "Cornerstone."  Plaintiff is a resident of Maricopa County, Arizona.

2.   Defendant Anthony D. Malzone ("Defendant") is a founder and general partner of the Partnership.  Defendant is a resident of Kankakee County, Illinois.

3.  Plaintiff and Defendant are the only two partners in the Partnership.

4.  The Partnership's principal place of business is located at 508 S. Poplar Circle, Manteno, Illinois 60950.

1

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the Plaintiff and Defendant are citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and the properties that are the subject of this suit are located in this judicial district.

## The Partnership Agreement

7. On or about January 1, 2007, Plaintiff and Defendant entered into a written partnership agreement ("Partnership Agreement"). A copy of the Partnership Agreement is attached hereto as **Exhibit 1** and incorporated herein by reference.

8. As noted in the Partnership Agreement, the Partnership was formed for the purpose of purchasing, rehabbing, renting and selling residential real estate property. (Ex. 1 – Partnership Agreement, Article XIV).

9. Article V of the Partnership Agreement provides that the "Partners shall contribute any necessary capital to the Partnership on a pro rata basis, and both shall be signatories on all loans." (Ex. 1- Partnership Agreement, Article V).

10. Article VI of the Partnership Agreement provides that the partners shall equally share the net profits and net losses 50/50. (Ex. 1 – Partnership Agreement, Article VI).

11. Article VIII of the Partnership Agreement provides in pertinent part as follows:

> If, in the judgment of the Partners, funds in excess of proceeds obtained by the Partnership for mortgage loans or other kinds of financing are required by the Partnership, such additional funds shall be contributed by the Partners in proportion to the equity interests in the Partnership. In the event of an unequal contribution, the amount of the difference in the contributed capital shall bear interest at prime plus 6%, as long as the inequity lasts. The amount of such interest shall be paid by the partnership to the larger contributing partner.

(Ex. 1 – Partnership Agreement, Article VIII).

12. Article XIII of the Partnership Agreement provides that in the "event either Partner shall want to withdraw from the Partnership and a satisfactory price cannot be reached between the Partners," the value of the withdrawing Partner's interest "shall be fixed by the appointment of three appraisers to value the interest of the Partnership." (Ex. 1 – Partnership Agreement, Article XIII).

13. Article XIII further provides that each Partner shall appoint one appraiser, and the third appraiser shall be appointed by the agreement of the two previously appointed appraisers. Article XIII further provides that the value of the Partnership shall be the value to which at least two of the appraisers agree. (Ex. 1 – Partnership Agreement, Article XIII).

14. Article XIII then provides that a partner may purchase the interest of the other partner by offering one-half of the appraised value of the Partnership. If neither party wishes to purchase the other partner's interest in the Partnership, or if the purchase does not occur within ninety days of determination of the appraised or agreed value, then the assets of the Partnership shall be sold and the proceeds thereof divided equally between the partners. (Ex. 1 – Partnership Agreement, Article XIII).

15. The amount of any inequality in contributions "shall be paid out of the gross proceeds to the larger contributing Partner prior to division thereof." (Ex. 1—Partnership Agreement, Article XIII).

## The Properties

16. In and around 2007, the Partnership began purchasing real estate property in Kankakee County, Illinois.

17. Beginning in 2007, the Partnership purchased a total of forty- seven (47) real estate properties, mostly single-family homes, which the Partnership has rented to various tenants since the properties were purchased (the "Properties). A list of the Properties owned by the Partnership and titled in the names of Bruce Dickstein and Anthony Malzone is attached hereto as **Exhibit 2**.

18. Fourteen (14) of the Properties are currently rented by tenants participating in assistance programs established under Section 8 of the Housing Act of 1937. 42 USC § 1437f. Those fourteen Properties have been approved as Section 8 Housing, and the Kankakee County Housing Authority covers a portion of each month's rent for those fourteen Properties using Section 8 funds.

19. Thirty-four (34) of the Properties are currently financed and subject to a mortgage held by the Bank of Bourbonnais located in Bourbonnais, Illinois.

20. The Partnership currently has an outstanding mortgage balance with the Bank of Bourbonnais in the amount of $1,771,231.00.

21. The Partnership currently has a joint bank account at the Bank of Bourbonnais, which is held in the names of both Plaintiff and Defendant (the "Partnership Account").

### Collection of Rent and Management of the Properties

22. Defendant has been the partner who has primarily handled collecting the rents and managing the Properties, including those Properties housing Section 8 tenants.

23. For reasons unknown to Plaintiff, the portion of the rental payments paid by Kankakee County Housing Authority were remitted via check payable to Defendant personally.

24. Upon information and belief, the Section 8 housing checks from the Kankakee County Housing Authority are remitted every month, or at times, every other month.

25. Defendant's usual practice has been to deposit the Section 8 housing checks in the Partnership Account at Bourbonnais Bank every month he receives a check.

26. Other rental payments are either deposited in the Partnership Account directly by the tenants, or collected by Defendant and deposited in the Partnership Account.

27. Beginning in 2008 and from time to time thereafter, Plaintiff would contribute additional capital to the Partnership when the Partnership's monthly rental proceeds were not sufficient to cover the Partnership's operating expenses.

28.     In addition, Plaintiff would advance the funds to pay the real estate taxes for certain Properties and make the mortgage payment to the Bank of Bourbonnais from his personal funds when the Partnership did not have enough funds from rental payments to cover these expenses.

29.     Plaintiff has advanced more than $1,612,717.48 in capital contributions to the Partnership to fund the Partnership's real estate operations.

30.     Defendant has made no capital contributions to the Partnership whatsoever despite being asked to do so.

**Funds Taken from the Partnership Account**

31.     In and around June of 2022, Plaintiff noticed that the Partnership was in need of ever increasing amounts of additional capital in order to pay the mortgage, taxes and other operating expenses, despite the fact that there was no major change in rental occupancies.

32.     In and around July 2022, Plaintiff began to suspect that Defendant was withdrawing funds from the Partnership Account because Plaintiff was continuously being required to contribute additional capital to cover expenses.

33.     On or about September 9, 2022, Plaintiff requested copies of the Partnership Account records from the Bank of Bourbonnais, including copies of the checks and deposits relating to the Section 8 housing payments.  Attached hereto as **Exhibit 3** are copies of checks and deposit slips related to some of the Section 8 housing rental payments.

34.     As noted in Exhibit 3, Defendant has been taking a portion of the Section 8 payment in cash rather than depositing the entire check in the Partnership Account.

35.     Defendant's practice of withdrawing cash from the Partnership Account was done without Plaintiff's knowledge or consent.

36.     Defendant personally received the following amounts from the Bourbonnais Bank Account without Plaintiff's authority:

    a. $2,600 in cash from the December Section 8 housing check

    b. $1,200 in cash from the January 2022 Section 8 housing check;

    c. $1,200 in cash from the February 2022 Section 8 housing check; and

    d. $4,000 in cash from the September 2022 Section 8 check.

37. Upon information and belief, the cash withdrawals listed in paragraph 32 were not used for operating expenses of the Partnership.

38. Upon information and belief, these cash withdrawals were used by Defendant for his sole personal benefit.

39. Upon information and belief, Defendant has never reimbursed the Partnership for the cash withdrawals listed in paragraph 35 above.

40. Upon information and belief, Defendant has made additional withdrawals from the Partnership Account for his personal use without Plaintiff's knowledge or consent.

### Plaintiff seeks Dissolution of the Partnership

41. On or about September 13, 2022, Plaintiff confronted Defendant regarding his lack of capital contributions, demanded that he comply with Articles V and VIII of the Partnership Agreement with respect to his obligation to make capital contributions to the Partnership, and informed Defendant that Plaintiff desired to withdraw from the Partnership.

42. Thereafter, on or about September 15, 2022, Defendant informed the Bank of Bourbonnais that Defendant would no longer be depositing rental receipts into the Partnership Account at Bank of Bourbonnais.

43. Despite Plaintiff's demands, Defendant has refused to both pay Plaintiff the fair value of Plaintiff's 50% interest in the Partnership and to participate in the dissolution and winding up of the Partnership.

**Mismanagement of Properties**

44. Upon information and belief, the utilities for some, if not all, of the Properties are billed to Defendant personally.

45. On or about September 26, 2022, the Manager of the Kankakee County Housing Authority contacted Plaintiff and informed Plaintiff that Defendant had refused to turn on the water at one of the Properties and that the water bill was in Defendant's name. A copy of the September 26, 2022 Kankakee County Housing Authority correspondence is attached hereto as **Exhibit 4**.

46. As noted in Exhibit 4, the water was turned off to one of the Properties that was being rented by a single mother with no family in the area.

47. The Kankakee County Housing Authority stopped rental payments for the property and has deemed the property "uninhabitable."

**COUNT I -  BREACH OF PARTNERSHIP AGREEMENT**

1-47. Plaintiff re-alleges paragraphs 1-47 of Plaintiff's Allegations Common to All Counts as paragraphs 1-47 of this Count I.

48. Plaintiff and Defendant entered into the written Partnership Agreement on or about January 1, 2007.

49. Article V of the Partnership Agreement provides that the partners shall contribute any necessary capital to the Partnership on a pro rata basis and that all net profits shall be shared by the partners equally 50/50. (Ex. 1 – Partnership Agreement, Article VI).

50. The Partnership Agreement further provides that a partner shall not be entitled to a distribution from the Partnership except as specifically provided for under the terms of the Partnership Agreement. (Ex. – Partnership Agreement, Article V).

51. Defendant has been primarily responsible for paying expenses and collecting rent for the Partnership.

7

52. Plaintiff has made capital contributions to the Partnership in an amount in at least $1,612,717.48.

53. Defendant has made no capital contributions to the Partnership whatsoever despite being asked to do so.

54. Upon information and belief, Defendant has also been unilaterally taking unauthorized distributions from the Partnership.

55. Defendant has breached the Partnership Agreement in multiple respects including but not limited to:

    a. Failing to contribute his pro rata share of capital contributions; and

    b. Taking unequal distributions from the Partnership.

56. Plaintiff sustained damages as a result of Defendant's breach of the contract in an amount in excess of $75,000.

57. Plaintiff's damages were proximately caused by Defendants' actions in failing to pay his pro rata share of capital contributions and by Defendant's withdrawal of funds from the Partnership Account.

WHEREFORE, Plaintiff Bruce Dickstein respectfully requests that this Court enter a judgment in his favor and against Defendant Anthony D. Malzone in the amount in excess of $75,000, and for any other relief the Court finds just and proper.

### COUNT II – BREACH OF FIDUCIARY DUTY

1-47. Plaintiff re-alleges paragraphs 1-47 of Plaintiff's Allegations Common to All Counts as paragraphs 1-47 of this Count II.

48-57. Plaintiff re-alleges paragraphs 48-57 of Count I as paragraphs 48 - 57 of this Count II.

58. As a partner of the Partnership, Defendant has a fiduciary duty of loyalty, fiduciary duty of care and the obligation of good faith and fair dealing.

59. Due to Defendant's representations that he was managing the Properties in the best interest of the Partnership, Plaintiff trusted Defendant and gave him authority to manage the Properties and the Partnership's Account.

60. Until recently, Plaintiff had no reason to suspect that Defendant was mismanaging the Properties and misusing the Partnership's assets.

61. Defendant breached his fiduciary duty to Plaintiff in multiple respects, including but not limited to:

    a. Failing to contribute his pro rata share of capital contributions;

    b. Improperly withdrawing funds from the Partnership Account for his own personal benefit;

    c. Taking unequal distributions from the Partnership;

    d. Masking or otherwise hiding distributions to himself;

    e. Converting Partnership assets;

    f. Failing to pay utilities and properly manage the Properties;

    g. Failing to account for revenue, expenses, income and losses; and

    h. Failing to dissolve the Partnership upon Plaintiff's request.

62. Defendant's breaches of his fiduciary duties to Plaintiff have caused Plaintiff damage in an amount in excess of $875,000.

63. Defendant knowingly breached his fiduciary duties to Plaintiff with the intent to deceive Plaintiff.

64. Defendant's breaches of his fiduciary duties were the proximate cause of the damages incurred by Plaintiff.

WHEREFORE, Plaintiff Bruce Dickstein respectfully requests that this Court enter a judgment in his favor and against Defendant Anthony D. Malzone in an amount in excess of 75,000,

plus punitive damages and attorney's fees and costs, as this Court deems appropriate under the circumstances, and for any other relief the Court finds just and proper.

## COUNT III – ACCOUNTING

1-47. Plaintiff re-alleges paragraphs 1-47 of Plaintiff's Allegations Common to All Counts as paragraphs 1-47 of this Count III.

48-57. Plaintiff re-alleges paragraphs 48-57 of Count I as paragraphs 48-57 of this Count III.

58-64. Plaintiff re-alleges paragraphs 58-64 of Count II as paragraphs 58-64 of this Count III.

65. Plaintiff and Defendant entered into the written Partnership Agreement on or about January 1, 2007.

66. Even though Defendant was the partner that generally managed the Properties and the Partnership's finances, Defendant failed to provide Plaintiff with reports or updates on the status of the financial condition of the Partnership.

67. In violation of the terms of the Partnership Agreement, Defendant failed to contribute his pro rata share of capital to the Partnership and failed to make equal distributions from the Partnership.

68. Defendant as a partner in the Partnership has a fiduciary duty to Plaintiff.

69. Plaintiff asserts that due to the number of Properties owned by the Partnership and managed by Defendant over the last fifteen (15) years, the Partnership's financials are of a complex nature.

70. Defendant is in sole control of the accounting records of the Partnership that would demonstrate the use of funds taken from the Partnership Account.

71. Plaintiff will need to engage in extensive discovery to identify the improper disbursements Defendant has taken from the Partnership.

WHEREFORE, Plaintiff Bruce Dickstein respectfully requests that this Court enter an Order requiring Defendant Anthony D. Malzone to produce an accounting of any and all deposits and withdrawals that have come into and out of the Partnership since 2007.

### COUNT IV – DECLARATORY JUDGMENT

1-47.   Plaintiff re-alleges paragraphs 1-47 of Plaintiffs Allegations Common to All Counts as paragraphs 1-47 of this Count IV.

48-57.  Plaintiff re-alleges paragraphs 48-57 of Count I as paragraphs 48-57 of this Count IV.

58-64.  Plaintiff re-alleges paragraphs 58-64 of Count II as paragraphs 58-64 of this Count IV.

65-71.  Plaintiff re-alleges paragraphs 65-71 of Count III as paragraphs 65-71 of this Count IV.

72.   Article IV of the Partnership Agreement provides that the Partnership shall continue until it is terminated as provided for by the terms of the Partnership Agreement.

73.   Article XIII of the Partnership Agreement provides that in the event either partner wishes to withdraw from the Partnership and a satisfactory price cannot be reached between the Partners, then the value of the Partnership shall be determined by the agreement of two appraisers.

74.   A partner then may purchase the interest of the other partner by offering one-half of the appraised value of the Partnership.  If neither party wishes to purchase the other partner's interest in the Partnership, then the assets of the Partnership shall be sold and the proceeds thereof divided equally between the partners.

75.   Plaintiff and Defendant are unable to agree upon a satisfactory price for the value of Plaintiff's 50% ownership interests in the Partnership.

76.   However, Defendant has not appointed an appraiser or otherwise complied with Article XIII of the Partnership Agreement that provides the procedure for the withdrawal of a partner and/or dissolution of the Partnership.

77. Accordingly, disputes have arisen between Plaintiff and Defendant as to the procedure for Plaintiff's withdrawal from the Partnership and dissolution of the Partnership.

78. An actual controversy exists between Plaintiff and Defendant with respect to the fair value of Plaintiff's 50% ownership interests in the Partnership and the proper procedure for Plaintiff's withdrawal from the Partnership and dissolution of the Partnership.

WHEREFORE, Plaintiff Bruce Dickstein respectfully requests that this Court enter a declaratory judgment and order in his favor and against Defendant Anthony D. Malzone that provides:

    a. A finding that Plaintiff Bruce Dickstein properly withdrew from the Partnership in accordance with the terms of the Partnership Agreement;

    b. A finding that Plaintiff Bruce Dickstein contributed, at a minimum, $1,612,717.48 in capital contributions to the Partnership and that Defendant has made zero capital contributions to the Partnership;

    c. A finding that Plaintiff is entitled to be reimbursed in an amount in at least $806,358.74, plus interest calculated at prime plus 6% for his excess capital contributions to the Partnership;

    d. An Order appointing a receiver to manage the Partnership;

    e. An Order requiring Defendant Anthony D. Malzone to either purchase the Plaintiff's 50% interest in the Partnership for a value that is agreed upon by two appointed appraisers as set forth in Article XIII of the Partnership Agreement, taking into account the unequal capital contributions and interest owed and loans personally guaranteed; OR sell the Partnership's assets and a divide the proceeds between Plaintiff and Defendant, taking into account the unequal capital contributions and interest owed; and

    f. And for any further relief the Court deems just and proper.

**COUNT V – DISSOLUTION**
**(805 ILCS 206/801)**
*In the Alternative to Count IV*

1-47.   Plaintiff re-alleges paragraphs 1-47 of Plaintiffs Allegations Common to All Counts as paragraphs 1-47 of this Count IV.

48-57.   Plaintiff re-alleges paragraphs 48-57 of Count I as paragraphs 48-57 of this Count IV.

58-64.   Plaintiff re-alleges paragraphs 58-64 of Count II as paragraphs 58-64 of this Count IV.

65-71.   Plaintiff re-alleges paragraphs 65-71 of Count III as paragraphs 65-71 of this Count IV.

72.-78.   Reserved.

79.   Article 8 of the Uniform Partnership Act provides in part as follows:

Events causing dissolution and winding up of partnership business. A partnership is dissolved, and its business must be wound up, only upon the occurrence of any of the following events:

(1)   in a partnership at will, the partnership's having notice from a partner, other than a partner who is dissociated under Section 601(2) through (10), of that partner's express will to withdraw as a partner, or on a later date specified by the partner;..

(5)   on application by a partner, a judicial determination that:

(i) the economic purpose of the partnership is likely to be unreasonably frustrated;
(ii) another partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner; or
(iii) it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement;…

(805 ILCS 206/801).

80.   The Partnership is an at will partnership.

81.   On or about September 13, 2022, Plaintiff gave notice that it was his express will to withdraw as a partner of the Partnership.

82. Due to Defendant's conduct and breaches of his fiduciary duties to Plaintiff, the economic purpose of the Partnership is unreasonably frustrated.

83. Further, due to Defendant's conduct and breaches of his fiduciary duties to Plaintiff, it is not reasonably practicable for Plaintiff and Defendant to carry on the business in the Partnership.

84. As such, the Partnership should be dissolved and the business of the Partnership should be wound up, pursuant to 805 ILCS 206/801, and the Court should order judicial supervision of the winding up of the business, pursuant to 805 ILCS 206/803.

WHEREFORE, Plaintiff Bruce Dickstein respectfully requests that this Court enter a judgment and order in his favor and against Defendant Anthony D. Malzone that provides:

   a. A finding that Plaintiff Bruce Dickstein properly withdrew from the Partnership in accordance with the terms of the Partnership Agreement;
   b. A finding that Plaintiff Bruce Dickstein contributed, at a minimum, $1,612,717.48 in capital contributions to the Partnership and that Defendant has made zero capital contributions to the Partnership;
   c. A finding that Plaintiff is entitled to be reimbursed in an amount in at least $806,358.74, plus interest calculated at prime plus 6% for his excess capital contributions to the Partnership;
   d. A finding that the Partnership shall be dissolved and the business of the Partnership shall be wound up pursuant to 805 ILCS 206/801.
   e. A finding that judicial supervision of the winding up of the business pursuant to 805 ILCS 206/803 is proper; and
   f. And for any further relief the Court deems just and proper.

                                                Respectfully submitted,

                                             By: */s/ Vincent T. Borst*
                                                     One of his Attorneys

Vincent T. Borst (ARDC No. 06192904)
Robbins DiMonte, Ltd.
180 N. LaSalle Street, Suite 3300
Chicago, IL 60601
T: (312) 782-9000
F: (312) 782-6690
E: vborst@robbinsdimonte.com
   cwalsh@robbinsdimonte.com