# EXHIBIT A

# PARTNERSHIP AGREEMENT

This General Partnership Agreement entered into this 1st day of January, 2007, by and between the following named partners:

1. Bruce Dickstein
2. Anthony D. Malzone

hereinafter collectively referred to as partners and individually as partners.

WITNESSETH:

## ARTICLE I
## NAME AND PURPOSE

The Partnership shall be carried on under the name of "Dickstein and Malzone Partnership". The Partnership is formed for the purpose of purchasing, rehabing, and selling residential real estate.

## ARTICLE II
## PLACE OF BUSINESS

The principal place of business shall be located at 508 S. Poplar Circle, Manteno, Illinois, 60950, or at such other place as shall be agreed upon by a majority in interest of the Partners from time to time.

## ARTICLE III
## PARTNERS

The names and addresses of the Partners are as follows:

| NAMES | ADDRESSES |
|---|---|
| Bruce Dickstein | 555 Latham Drive<br>Bourbonnais, IL 60914 |
| Anthony D. Malzone | 508 S. Poplar Circle<br>Manteno, IL 60950 |

ARTICLE IV
TERM

The Partnership shall commence on the date above written and shall continue until terminated as provided by this Agreement.

ARTICLE V
CAPITAL CONTRIBUTIONS

The Partners shall contribute any necessary capital to the Partnership on a pro rata basis, and shall both be signatories on all loans.

An individual capital account shall be established and maintained for each Partner, who shall receive the interest in the Partnership and shall be credited with the amounts of his capital contributions to the Partnership from time to time. A Partner shall not be entitled to interest on his capital contribution, or to withdraw any part of his capital account, or to receive any distribution from the Partnership, except as specifically provided herein.

To the extent that any Partner shall fail to timely contribute his pro rata share of any contribution he shall be subject to the terms and conditions of Article VIII, "Additional Capital Contributions" set forth hereinbelow with regard to failure to pay his pro rata share of capital contributions.

ARTICLE VI
NET PROFITS, NET LOSSES AND CASH FLOW

(A) Profits and Losses. Net profits and net losses shall be shared by the Partners as follows:

        Bruce Dickstein        50%

        Anthony D. Malzone        50%

The terms "net profits" and "net losses" shall mean the net profits and losses of the Partnership as determined for federal income tax purposes by the certified public accountant servicing the Partnership account.

(B)  Cash Flow. The cash flow of the Partnership shall be the net profits and losses of the Partnership that may occur from time to time. The cash flow shall be distributed to the partners at the discretion of the partners, but not less than annually.

(C)  Income. All net profits not distributed shall be held for the benefit of the partners equally.

## ARTICLE VII
## BOOKS

The Partnership's books and records shall be maintained at the principal office of the Partnership, and each of the Partners shall have access thereto at all times. The books shall be kept on cash basis for each calendar year, and shall be closed and balanced at the end of each such year.

## ARTICLE VIII
## ADDITIONAL CAPITAL CONTRIBUTIONS

If, in the judgment of the Partners, funds in excess of proceeds obtained by the Partnership for mortgage loans or other kinds of financing are required by the Partnership, such additional funds shall be contributed by the Partners in proportion to their equity interests in the Partnership. In the event of an unequal contribution, the amount of the difference in the contributed capital shall bear interest at prime plus 6%, as long as the inequality lasts. The amount of such interest shall be paid by the partnership to the larger contributing partner.

# ARTICLE IX
## MANAGEMENT, DUTIES AND RESTRICTIONS

Except as otherwise expressly provided herein, the management and control of the operations of the Partnership and the maintenance of the property of the Partnership shall rest exclusively with the Partners.

# ARTICLE X
## VOTING

Each Partner shall be entitled to vote in proportion to his equity interest in the Partnership from time to time. Such vote may be exercised by written or oral notification by a Partner to the other Partner.

# ARTICLE XI
## CONSENT TO OPERATIONS

The procedure for the operations of the Partnership shall be as follows:

(A) The affairs of the Partnership shall be handled by the Partners.

(B) The following shall require the vote and unanimous aproval of all of the Partners:

    (1) the purchasing and developing of any real estate properties;
    (2) The amendment of this Partnership Agreement; and

# ARTICLE XII
## AMENDMENTS

Amendments to this Agreement shall become effective only if in writing, signed by all the Partners.

## ARTICLE XIII
## TRANSFER OF PARTNERSHIP INTEREST

In the event of the death of either Partner, then the estate of the deceased Partner shall become the Partner for purposes of wrapping up the Partnership. If the Partner and the representative of the deceased Partner cannot agree as to the value of the deceased Partner's interest, the value of the deceased Partner's interest shall be fixed by the appointment of three appraisers to value the interest of the Partnership. One appraiser shall be appointed by the surviving Partner, one appraiser could be appointed by the deceased Partner's representative, and one appraiser to be appointed by the agreement of the two previously appointed appraisers. A value to which at least two of the appraisers agree shall be the price of the Partnership. At that point, the surviving Partner may purchase all partnership interest by offering one-half of the appraised value to the representative of the deceased Partner. The same shall be binding upon the deceased Partner. In the event that the surviving Partner is unable or unwilling to purchase the deceased Partner's interest, then the representative of the deceased Partner may purchase the interest of the surviving Partner for a like amount. If neither parties wish to purchase interest in the Partnership, then the assets of the Partnership will be sold and the proceeds thereof divided equally.

Inequality of Contribution: As set forth and defined in Article VIII, the amount of inequality shall be paid out of the gross proceeds to the larger contributing Partner prior to division thereof. Once the appraised value or agreed value has been reached, the opportunity to purchase the other share shall be completed within ninety days. If neither party purchases within ninety days, then the sale set forth above shall commence.

In the event either Partner shall want to withdraw from the Partnership and a satisfactory price cannot be reached between the Partners, then the appointment of appraisers as set forth above shall apply to the determination of the value of the Partnership as though there were a deceased Partner. Once that price has been determined, then the remaining Partner shall have the right to purchase the interest of the withdrawing Partner for one-half of the price determined for the Partnership. As stated above, this shall be completed within ninety days of reaching the appraised price. If the remaining Partner chooses not to purchase at the appraised price, then the Partnership's assets will be sold and the net proceeds thereof divided equally after any inequality of contribution has been paid.

## ARTICLE XIV
## MISCELLANEOUS

The purpose of this Partnership is the purchase, rehab, rental and eventual resale of residential real estate. Neither Partner shall purchase or rehab any properties outside the Partnership. Failure to comply shall terminate the Partnership Agreement immediately.

## ARTICLE XV
## NOTICES

All notices, consents and other instruments hereunder shall be in writing and mailed by certified mail, return receipt requested, postage prepaid, and shall be directed to the parties hereto at the addresses hereinabove set forth or at the last addresses of the parties furnished by them in writing to the other Partner. Notices to the personal

representative of a deceased Partner's estate shall be mailed in the same manner to the last known address of such representative.

## ARTICLE XVI
## BINDING EFFECT

This Agreement shall inure to the benefit of the be binding upon, the parties hereto and their respective next-of-kin, legatees, administrators, executors, legal representatives, successors and permitted assigns.

IN WITNESS WHEREOF, the parties hereto have executed copies of this Agreement on the day and year first above written.

PARTNERS:

_____           _____
BRUCE DICKSTEIN                      ANTHONY MALZONE